1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                          NORTHERN DISTRICT OF CALIFORNIA

9

10   RICHARD C. HENNING,
                                                  Case No. 15-cv-05171 NC
11                       Plaintiff,
                                                  **ORDER GRANTING IN PART AND**
12             v.                                 **DENYING IN PART THE**
                                                  **COUNTY'S MOTION FOR**
13   THE COUNTY OF SANTA CLARA,                   **SUMMARY JUDGMENT**
14                       Defendant.               Re: Dkt. No. 30

15

16          Plaintiff Richard C. Henning asserts disability access claims under the Americans

17   With Disabilities Act, the Rehabilitation Act, and under various related California state

18   laws.  Defendant County of Santa Clara moves for summary judgment, seeking to dismiss

19   Henning's lawsuit in its entirety.  The Court GRANTS IN PART AND DENIES IN PART

20   the County's motion.  The Court finds that Henning shows a genuine dispute of material

21   fact as to his core disability access claims under federal and state law.  But the Court limits

22   Henning's claim to the time period in which he establishes standing to sue.

23          As a general matter, the Court finds Henning has standing to bring his claims both

24   for injunctive relief and monetary damages, but limits standing to sue to the period after

25   April 29, 2014.  His standing to sue varies depending on the elements of each claim.  As to

26   Henning's federal claims under the ADA and Rehabilitation Act, the Court finds that

27   Henning raises a genuine issue of material fact, but that any denial of meaningful access to

28   VMC services would not have occurred until after September 30, 2015, the date on which

Case No. 15-cv-05171 NC

Henning first complained to Customer Service about his struggle punching numbers into his phone.  In addition, the Court finds Henning raises a genuine dispute of material fact as to intentional discrimination, but limits Henning's standing to sue to the period after October 20, 2015.  Also, to the extent Henning's federal claims survive, so too do his state law claims.  He has standing to bring his state law claims as of September 30, 2015.

## I.   BACKGROUND

### A.   Facts

Henning is a mobility impaired man suffering from neurodegenerative chronic distal symmetric polyneuropathy.  Dkt. No. 16 at 2.  *Id.*  Henning is a Santa Clara County resident who visits Santa Clara Valley Medical Center (VMC) 2 to 5 times a month.  *Id.* at 2-3.  VMC is a hospital owned "and/or" operated by the County.  *Id.* at 3.  As relevant here, Henning's limitations due to his symptoms include "tingling; stinging pain in the hands and feet; weak muscles; chronic pain; numbness in the hands and feet; [and] hypersensitivity to pain in points on the body."  *Id.* at 5.  Henning discussed his difficulty using telephones, and that even with "punch-tone telephones," his usage was limited because of his lack of agility and the pain he feels in constantly having to press keys.  Dkt. No. 34 (Henning Decl.) at 2.  He states that pressing more than 40 keys during a single phone call to VMC is not uncommon.  *Id.* at 3.  Henning provided 28 phone numbers within VMC that he "frequently" calls.  *Id.* at 3-4.  According to Henning, he first complained to the VMC's customer service department about the phone system on June 9, 2010.  *Id.* at 4.  Documents provided by the County show that complaint was not about Henning's difficulty punching numbers into phones, it was about his inability to get an earlier appointment.  Dkt. No. 38 at 1.

According to Henning, he complained about the phone system numerous times to his diabetic nurse, Karen Belveal, who gave Henning her direct line to provide him with more direct service.  Henning Decl. at 4.  On September 30, 2015, Henning again complained to Customer Service about his difficulties using the phone system.  *Id.* at 5.  Henning complained once more on October 20, 2015, specifying in his written complaint

1   that he had problems using the phone system because his "hands are disabled," he could
2   not press keys, and the wait time was too long.  Dkt. No. 31-1 at 36 (wait time "often" over
3   30 minutes).  His proposed remedy in that complaint was "to have handicap lines of
4   communications to get through to various departments of Valley Med!"  *Id*.  The Customer
5   Service case review shows VMC personnel considered this complaint "to be a general
6   concern between patient and patient access via Valley Communication to desired
7   departments," and that they would close the case.  *Id*. at 34.  According to Henning, the
8   current system was not replaced with voice-activated dialing.  Henning Decl. at 5.

9       Gregory Price, the Deputy Director of Ambulatory and Community Health Services
10  for VMC manages the call center for primary care patients.  Dkt. No. 32 at 1.  According
11  to Price, he oversaw an upgrade of VMC's primary care phone system, which, as of July
12  2016, included voice-activated dialing.  *Id*. at 1-2.  Price declared that "VMC has been
13  taking steps to add this feature at least since September 2015."  *Id*. at 2.

14      **B.    Procedural History**

15      Henning filed this case on November 11, 2015.  Dkt. No. 1. The amended
16  complaint alleges nine claims for relief under: (1) the California Unruh Civil Rights Act,
17  Cal. Civ. Code § 51; (2) the California Disabled Persons Act, Cal. Civ. Code § 54; (3) Title
18  II of the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12131, *et seq*.; (4) Title III
19  of the ADA, 42 U.S.C. § 12181, *et seq*.; (5) § 504 of the Rehabilitation Act of 1973; (6)
20  California Government Code § 11135; (7) the False Advertising Practices Act, Cal. Bus. &
21  Prof. Code § 17500, *et seq*.; (8) California Unfair Business Practices Acts, Cal. Bus. &
22  Prof. Code § 17200; and (9) declaratory relief.  Dkt. No. 16. The County filed this motion
23  for summary judgment on January 11, 2017.  Dkt. No. 30.  The parties attended a hearing
24  on this motion on March 1, 2017.  Both parties consented to the jurisdiction of a magistrate
25  judge.  Dkt. Nos. 6, 10.

26
27
28

United States District Court
Northern District of California

## II.   LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* Bald assertions that genuine issues of material fact exist are insufficient.  *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party.  *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

## III.   DISCUSSION

The County seeks summary judgment on all of Henning's claims.  At the March 1, 2017 hearing, Henning agreed to drop three of his claims.  These claims are under (1) Title III of the ADA; (2) the False Advertising Practices Act, Cal. Bus. & Prof. Code § 17500; and (3) California Unfair Business Practices Acts, Cal. Bus. & Prof. Code § 17200.  This leaves six claims.  Before addressing the merits, the Court will address the County's sham affidavit argument against Henning's January 25, 2017, declaration submitted in opposition to summary judgment.  Dkt. No. 34.

1

## A.   Henning's Declaration is Not A Sham Affidavit.

The County argues Henning's declaration is a sham affidavit because it includes information he could not provide at his deposition and in written interrogatories.  Dkt. No. 36.  Henning counters the declaration is not a sham affidavit because the County asked confusing questions in the deposition and in the interrogatories.  Dkt. No. 43-2 at 6.  In addition, Henning argues he lacked access to his phone records.  *Id*.

A party may not "create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mut. Ins. Co*., 952 F.2d 262, 266 (9th Cir. 1991).  "This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais [ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony.'"  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Kennedy*, 952 F.2d at 266) (brackets in original).  Yet because the Court may not make credibility determinations on summary judgment, the sham affidavit rule "should be applied with caution."  *Yeager*, 693 F.3d at 1080 (quoting *Van Asdale v. Int'l Game Tech.,* 577 F.3d 989, 998 (9th Cir. 2009)).  "[I]nconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit."  *Van Asdale*, 577 F.3d at 998-99.  The non-moving party may "'elaborate[e] upon, explain[] or clarify[] prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.'"  *Id*. at 999 (quoting *Messick v. Horizon Indus*., 62 F.3d 1227, 1231 (9th Cir. 1995)).

Here, Henning filed a declaration on January 25, 2017, detailing the phone numbers he would call at VMC and complaints he filed.  Dkt. No. 34.  The Court finds that his declaration did not contradict his deposition testimony or the interrogatories the County propounded.  Indeed, the County could have filed a motion to compel if it objected to Henning's answers to the interrogatories.  *See* Dkt. No. 43-5.  The Court notes the Ninth Circuit's cautionary language regarding the application of the sham affidavit rule on summary judgment.  *Yeager*, 693 F.3d at 1080.  At the hearing and in its reply brief, the

United States District Court
Northern District of California

County pointed out contradictions between the declaration and deposition.  Yet such discrepancies are not so "clear and unambiguous" as to justify striking Henning's declaration, and overall, Henning's declaration served to elaborate on, explain, and clarify his deposition testimony.  *Van Asdale*, 577 F.3d at 998-99.  Thus, the Court finds that Henning's declaration does not meet the Ninth Circuit's standard as a sham affidavit.

### B.    Henning Has Standing to Request Injunctive Relief.

The County argues Henning lacks standing to request injunctive relief because his claims are moot, as the County already implemented voice-activated dialing at VMC.  Dkt. No. 30 at 12.

The party invoking federal court jurisdiction has the burden of establishing standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  There are three elements of standing.  *Id.* at 560.  First, the plaintiff "must have suffered an 'injury in fact' . . . .  Second, there must be a causal connection between the injury and the conduct complained of . . . .'  Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 560-61 (internal citations omitted).  Relatedly, mootness has been described as "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, n.22 (1997).  As a private plaintiff may only bring a claim under the ADA for injunctive relief, the defendant's "voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver v. Ralphs Grocery Co*., 654 F.3d 903, 905 (9th Cir. 2011) (internal citation omitted).  Lastly, the burden of showing mootness lies with the party asserting the claim is mooted.  *Friends of the Earth*, 528 U.S. at 189 (internal citations and quotation marks omitted).

Here, the County does not contest that Henning originally had standing to pursue this case.  Indeed, according to the declaration of VMC employee, Gregory Price, the

1   voice-activated dialing was not operational for the primary care phone system until July

2   2016.  Dkt. No. 32 at 1-2.  However, the County argues the voice-activated dialing system

3   is now operational, so all of Henning's claims are moot.  Dkt. No. 30 at 13.  As of

4   December 2016, Henning disputes that a voice-activated dialing system has been

5   implemented at all, Henning Decl. at 5, and he pointed out that any voice-activated dialing

6   would be limited to primary care and does not include the specialty clinics he utilizes.

7   Dkt. No. 35 at 19.  Thus, there is a dispute of fact between the parties regarding the

8   implementation of a voice-activated dialing system, and it is not the place of the Court to

9   resolve such a dispute on summary judgment.  The County has not shouldered its "heavy

10  burden" in persuading the Court that Henning's claim for injunctive relief is moot.

11  *Friends of the Earth*, 528 U.S. at 189.

12  ### C.   Henning Has Standing to Seek Monetary Damages Because He Alleged
13  Evidence of Injury During the Limitations Period.

14         The County moves to dismiss Henning's claims for monetary damages because he

15  did not provide specific dates on which he was denied VMC services due to his difficulties

16  with the phone system.  Dkt. No. 30 at 14.  Henning later filed a declaration providing

17  phone numbers and dates that he complained about the phone system.  Henning Decl.

18  Those dates would put Henning's claims within the applicable statute of limitations.

19         In this case, there is a three-year statute of limitations for the Title II claim.  *Sharkey*

20  *v. O'Neal*, 778 F.3d 767, 773-75 (9th Cir. 2015) (applying Cal. Gov't Code § 11135(b)'s

21  three year statute of limitations —the most analogous California state law claim—to

22  California Title II claims).  A plaintiff may not sue for an injury that occurred outside of

23  the limitations period.  *Pickern v. Holiday Quality Foods Inc*., 293 F.3d 1133, 1137 (9th

24  Cir. 2002).  This case is about the lack of voice-activated dialing, not about wait times or

25  Henning having to speak to different people each time he calls VMC.  Dkt. No. 16 at 2.

26         Henning argued at the hearing that his claims are not time-barred and that the Court

27  should find the statute of limitations began to run once Ms. Belveal began helping

28  Henning.  Henning did not provide a date on which Ms. Belveal began helping him.

Case No. 15-cv-05171 NC                7

1   Henning Decl. at 4. However, in his deposition, Henning described an April 29, 2014,

2   telephone encounter note regarding his frustration calling clinic lines as having arisen from

3   his difficulty punching in numbers on his phone. Dkt. No. 33-11; Dkt. No. 33-2 at 2. In

4   this complaint, he complained he was unable to get through "due to long wait time, each

5   time his phone batteries ran out." Dkt. No. 33-2 at 2. It is unclear if Ms. Belveal knew of

6   Henning's difficulty punching the numbers into his telephone, and the note says nothing

7   about that issue. Henning's testimony suggests she knew, and this is the first date on

8   which the Court has a record of Henning having complained to anyone about this issue.

9   On the County's summary judgment motion, the Court must draw all justifiable inferences

10  in the light most favorable to Henning. *Tolan*, 134 S. Ct. at 1863. Thus, the Court finds

11  the earliest date that Henning has shown he had standing to file suit against the County was

12  April 29, 2014. This is within the three year statute of limitations period because Henning

13  filed his complaint in November 2015.

14         This does not mean Henning had any damages as of April 2014, as he has not

15  shown the County knew of his struggle or that he was denied any access to VMC services.

16  Furthermore, it is important to note that the first time the Court has any testimony that

17  Henning filed a complaint to Customer Service regarding his issues punching numbers into

18  the phone was on September 30, 2015.[12] Dkt. No. 33-11 at 29-30. Further, the first time

19  the Court has documentary evidence in the form of a written complaint of Henning having

20  notified VMC of his difficulty using the phone system due to his disability is October 20,

21  2015. Dkt. No. 33-7 at 2-4.

22

23

24

25  [1] *See* Dkt. No. 33-13 at 2 (February 23, 2011 review of complaint filed by Henning
    regarding a wait time on hold of "over an hour"); Dkt. No. 33-14 (April 14, 2011 review of
26  complaint by Henning regarding not getting phone calls returned).
    [2] The Court notes that the October 1, 2015, case review of Henning's complaint said
27  nothing about his difficulties punching numbers into his phone. Dkt. No. 31-1 at 30-31.
    However, for purposes of summary judgment, the Court accepts Henning's testimony as
28  true.

United States District Court
Northern District of California

### D.  Henning Raised a Dispute of Material Fact as to Whether He Was Denied Meaningful Access to VMC Services For After September 30, 2015.

The parties dispute whether Henning was denied meaningful access to VMC facilities due to his difficulties using the phone system.

#### 1.  Legal Standard

Title II of the ADA and Rehabilitation Act, § 504 claims are governed by the same test.  *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).  To show a public program or service violates Title II of the ADA or § 504 of the Rehabilitation Act "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability."  *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (quoting 42 U.S.C. § 12132) (emphasis omitted).  For claims under § 504, there is an additional element, that the program receives federal financial assistance.  *Id*.  The County contests that it satisfies the second and third element of this test.[3]  Dkt. No. 30 at 17.

The prohibition against discrimination is "understood as a requirement to provide 'meaningful access.'"  *Lonberg v. City of Riverside*, 571 F.3d 846, 851 (9th Cir. 2009).  An organization receiving "federal funds violates § 504 if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services."  *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) (citing *Alexander v. Choate*, 469 U.S. 287, 301-02 & n. 21 (1985).  The "meaningful access" requirement also applies under Title II.  *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013).  To determine what "meaningful access" means in a given circumstance, the Court looks to relevant regulations interpreting Title II.  *Id*.  Title II regulations at 28 C.F.R. part 35, as to

---

[3] The County has neither admitted nor denied that VMC receives federal funding, and the Court notes that the issue was not raised in the motion for summary judgment.

"program accessibility, existing facilities, and communications" are consistent with those under the Rehabilitation Act, § 504 at 28 C.F.R. part 39. *Id.* at 1099. Thus the analysis of the County's compliance with those regulations is applicable under the ADA and § 504.

Neither party provided the Court with much in the way of regulations to look to. The County cited an inapposite regulation, and the Court here looks to 28 C.F.R. § 35.160 regarding communications. Subsection (a)(1) requires a public entity to "take appropriate steps to ensure that communications with . . . members of the public . . . with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). Subsection (b) provides that:

> (1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including . . . members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.

> (2) The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities.

28 C.F.R. § 35.160(b). The definition of "auxiliary aid" is illustrative, not exhaustive. 28 C.F.R. § 35.104 ("Auxiliary aids and services includes . . . and . . . Other similar services and actions."). Though the examples provided in the definition specify aids for people who are "deaf or hard of hearing" and those who are "blind or have low vision," the language of § 35.104, and § 35.160(b) shows auxiliary aids should vary according to the disabled person's needs. The determination of whether a defendant provided the plaintiff "with 'meaningful access' or an equal opportunity to gain the same benefit as her nondisabled peers is a fact intensive inquiry." *Poway Unified Sch. Dist. v. K.C. ex rel. Cheng*, No. 10-cv-897 GPC DHB, 2014 WL 129086, at *7 (S.D. Cal. Jan. 14, 2014).

### 2. Application to Henning's Claims

Henning has not shown he was denied meaningful access to VMC's services while

1    Ms. Belveal assisted him.  As Henning admitted, Ms. Belveal helped him "in making

2    appointments and refilling prescriptions."  Dkt. No. 35 at 26.  He received *better* access to

3    VMC than his non-disabled peer who called VMC and would be put on hold because he

4    had his nurse.  Even if the County did not order Ms. Belveal to help Henning, the fact

5    remains that while she helped him, until December 2015 or January 2016, he was not

6    denied "an equal opportunity to participate in, and enjoy the benefits of" VMC.  28 C.F.R.

7    § 35.160(b)(1), *see* Dkt. No. 33-11 at 12.

8         Furthermore, during the time Ms. Belveal helped Henning, there is no evidence

9    anyone—other than possibly Ms. Belveal—knew of his struggle with punching numbers

10   into his telephone.  Thus, while it is true that VMC was required to "give primary

11   consideration to the requests of individuals with disabilities," when determining what types

12   of auxiliary aids and services are required, 28 C.F.R. § 35.160(b)(2), as far as Henning

13   declared and the documentary evidence provides, he never actually requested a voice-

14   activated dialing system be implemented.  *See e.g.*, Dkt. No. 31-1 at 36 (October 20, 2015,

15   customer service complaint requesting a specific telephone line for disabled people).  He

16   never testified that he requested voice-activated dialing in his deposition.

17         The deposition transcript is rife with testimony documenting instances in which

18   Henning *did* speak over the phone with VMC personnel from 2014 to early 2015.  Dkt.

19   No. 33-11.  In addition, in the several months before his May 26, 2016, deposition,

20   Henning volunteered that he had been given "an inside number" for filling his

21   prescriptions.  Dkt. No. 33-11 at 10-11.  Thus, while Ms. Belveal assisted Henning, he was

22   not "excluded from participation in or denied the benefits of" VMC's services, nor was he

23   "otherwise discriminated against by" VMC because of his disability.  *Weinreich*, 114 F.3d

24   at 978.

25         The earliest VMC knew of Henning's struggle using the telephone system was

26   September 30, 2015.  This was the date the Court first has evidence of Henning

27   complaining to VMC Customer Service *about his difficulty punching in numbers*.

28   Henning presented no evidence that he complained about this specific issue before, though

Case No. 15-cv-05171 NC                  11

1  he had complained about wait times.  September 30, 2015, is the earliest date on which

2  Henning raised a dispute of material fact sufficient to support a claim for disability

3  discrimination against the County.  Thus, the Court DENIES summary judgment against

4  Henning on his ADA and § 504 claims, but limits this claim to the period *after* September

5  30, 2015.

6        The Court cautions against reading this holding too broadly.  For example, there is a

7  question of fact as to when Ms. Belveal stopped helping Henning make phone calls.  There

8  is also a question as to what voice-activated dialing features the County put into effect, and

9  whether the changes made were sufficient under the ADA and § 504's implementing

10 regulations.  The answers to these questions will influence the contours of Henning's

11 claims for the alleged denial of meaningful access.  It is not for the Court to define these

12 contours on summary judgment, as they would necessarily require fact-finding.

13 **E.    Monetary Damages May Be Available to Henning.**

14       The parties dispute whether Henning can show the County intentionally

15 discriminated against him because such a showing would allow Henning to seek monetary

16 damages.  *See* Dkt. Nos. 30 at 23-24, 35 at 28-31.

17       The same remedies are available for violations of Title II and § 504.  *Lovell v.*

18 *Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002) (citing 42 U.S.C. § 12133).  "To recover

19 monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must

20 prove intentional discrimination on the part of the defendant."  *Duvall*, 260 F.3d at 1138.

21 The deliberate indifference standard applies to prove intentional discrimination.  *Id*.

22 Proving "[d]eliberate indifference requires both knowledge that a harm to a federally

23 protected right is substantially likely, and a failure to act upon that likelihood."  *Id.* at 1139

24 (citation omitted).  The first element requires the public entity have notice that an

25 accommodation is required.  *Lovell*, 303 F.3d at 1056 (citing *Duvall*, 260 F.3d at 1139).

26 The second element is met "if the entity's 'failure to act [is] a result of conduct that is more

27 than negligent, and involves an element of deliberateness.'  Under the second element, 'a

28 public entity does not 'act' by proffering just any accommodation: it must consider the

particular individual's need when conducting its investigation into what accommodations are reasonable.'" *Lovell*, 303 F.3d at 1056 (quoting *Duvall*, 260 F.3d at 1139).

As to the first element, the Court finds VMC was unaware that an accommodation might be required until Henning's complaint of September 30, 2015. While it is true that Ms. Belveal may have known of Henning's struggle with punching numbers into his phone, and may have helped him as early as April 2014, there is no indication VMC was made of aware of Henning's struggle. Complaints about the lack of voice-activated dialing were not stated in the earlier doctor's notes or telephone call notes in the record. To the contrary, as discussed above, those earlier complaints were about wait times while on hold or Henning having to wait too long to see a doctor.

Regarding the second element, the evidence does show that Henning specifically complained about his difficulty punching numbers into his phone on October 20, 2015. Dkt. No. 31-1 at 36. Yet the Customer Service complaint review does not show that any effort to accommodate him was made. *Id*. at 34. Even though Henning did not request voice-activated dialing, on that date, the County was on notice of Henning's specific communication issue and opted to close the case as a "general concern between patient and patient access." *Id*. The type of language in this review raises the question of whether Customer Service simply opted not to do anything about Henning's complaint or accommodate his needs. *Lovell*, 303 F.3d at 1056. The Court cannot guess. Thus, as of October 20, 2015, for purposes of summary judgment, the County met both elements of the deliberate indifference test, opening itself up to a claim for monetary damages.

## F.   Henning's Remaining Claims Survive Summary Judgment.

Henning's complaint includes claims under the Unruh Civil Rights Act, California Disabled Persons Act, and California Government Code § 11135, in addition to a claim for declaratory relief. Dkt. No. 16. The parties agree that Henning's California law claims are dependent on the viability of his ADA and § 504 claims. *See* Dkt. Nos. 30 at 24-26, 35 at 31-32. A violation of an individual's rights under the ADA is also a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f). Similarly, a violation of the ADA is a violation

1   of the California Disabled Persons Act.  Cal. Civ. Code § 54(c); *see also Moeller v. Taco*

2   *Bell Corp.*, 816 F. Supp. 2d 831, 848 (N.D. Cal. 2011).  As to the Government Code §

3   11135 claim, the statute is "coextensive with the ADA because it incorporates the

4   protections and prohibitions of the ADA and its implementing regulations," and "is

5   identical to the Rehabilitation Act except that the entity must receive State financial

6   assistance rather than Federal financial assistance." *Bassilios v. City of Torrance, CA*, 166

7   F. Supp. 3d 1061, 1084 (C.D. Cal. 2015) (citing Cal. Gov't Code § 11135(b) and quoting

8   *D.K. ex rel. G.M. v. Solano Cty. Office of Educ.*, 667 F. Supp. 2d 1184, 1191 (E.D. Cal.

9   2009).  If a public entity violates the ADA or § 504, it also violates § 11135 if the entity

10  receives state funding.  *Id.*  There is no dispute as to whether VMC receives state funding,

11  and the County has neither admitted nor denied that the state helps fund VMC.

12          Lastly, the claim for declaratory relief is dependent on the viability of Henning's

13  federal claims.  *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983); *Gov't Employees Ins.*

14  *Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998).  Because the federal claims survive, so

15  too does the claim for declaratory relief.

16          Thus, because the Court found a genuine dispute of material fact as to whether the

17  County violated his rights under the ADA and § 504, the Court DENIES summary

18  judgment as to the remaining claims to the extent it denied summary judgment on the

19  federal claims.  Fed. R. Civ. P. 56(a).

20  **IV.  CONCLUSION**

21          Because the Court finds Henning raised a genuine dispute of material fact as to his

22  ADA, § 504, and related state law claims, the Court GRANTS IN PART and DENIES IN

23  PART the County's motion for summary judgment, subject to limitations.  The Court

24  grants summary judgment for the County as to the three dropped claims.  The Court limits

25  Henning's claims as follows:

26          1.      Henning has standing sue the County on all of his remaining claims for

27  monetary damages after April 29, 2014, the date the Court first has record of his

28  complaining to Ms. Belveal about his struggle punching numbers into his phone.

United States District Court
Northern District of California

1         2.     Henning may not sue for violations of his rights under the ADA and § 504

2    that occurred before September 30, 2015, the date he first complained to Customer Service

3    about his difficulties punching numbers into his phone.

4         3.     Henning may not sue the County for intentional discrimination for events

5    occurring before October 20, 2015, the date on which Henning first raised a dispute of

6    material fact as to whether the County treated him with deliberate indifference.

7         4.     Henning may sue for violations of his rights under the Unruh Civil Rights

8    Act, California Disabled Persons Act, and California Government Code § 11135, and for

9    declaratory relief, but may not allege that such violations occurred before September 30,

10   2015, the date he first complained to Customer Service about his difficulties punching

11   numbers into his phone.

12        These limitations are discussed in full above.  The Court also finds Henning has

13   standing to request injunctive relief and monetary damages.

14

15        **IT IS SO ORDERED.**

16

17   Dated:  March 17, 2017    _____

18                               NATHANAEL M. COUSINS
                               United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Case No. 15-cv-05171 NC       15